```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
SANDATA TECHNOLOGIES, INC.,          :
                                     :
                  Plaintiff,         :
                                     :
         -against-                   :
                                     : 05 Civ. 09546 (LMM) (THK)
                                     :
INFOCROSSING, INC.,                  :
                                     :
                  Defendant.         :
                                     :
------------------------------------X
INFOCROSSING, INC.,                  :
                                     :
                  Plaintiff,         :
                                     :
           -against-                 :06 Civ. 01896 (LMM) (THK)
                                     :
                                     :
SANDATA TECHNOLOGIES, INC., et al.,  :
                                     : MEMORANDUM OPINION AND
                                     :            ORDER
                                     :
                  Defendants.        :
------------------------------------X
```

**THEODORE H. KATZ, United States Magistrate Judge.**

These related patent infringement actions were referred to this Court for general pretrial supervision. The cases have required an inordinate amount of supervision because of the numerous discovery disputes that have arisen. Presently before the Court are yet additional disputes — these relating to expert discovery.

## BACKGROUND

The instant dispute arises in the following context. In this action, Plaintiff Sandata Technologies, Inc. ("Sandata") asserts that Defendant Infocrossing, Inc. ("Infocrossing") has infringed

its patent relating to a telephone call-in system for maintaining time and attendance records of home healthcare workers. Infocrossing, in turn, contends, <u>inter alia</u>, that the Sandata patent is invalid. Thus, on the issue of infringement, Sandata bears the burden of proof and, on the issue of invalidity, Infocrossing bears the burden of proof.

It is routine that the party with the burden of proof on a particular issue be the first to submit its expert reports addressing the issue. The other party then is given the opportunity to submit a rebuttal report and, if requested and allowed by the Court, a reply expert report may follow. <u>See generally</u> Fed. R. Civ. P. 26(a)(2). When the schedule was initially set in this action for the submission of expert reports, Infocrossing's counsel represented that he did not intend to submit any initial expert reports. Consistent with routine practice in this district and elsewhere, the natural and obvious conclusion to be drawn from this statement was that Infocrossing was not going to file an expert report on the issue on which it bore the burden of proof, <u>i.e.</u>, invalidity. Sandata was therefore directed to submit its expert reports by July 20, 2007, and Infocrossing was given until August 10 to provide responsive reports.

Sandata served its expert reports as required; however, when Infocrossing submitted what was supposed to be its rebuttal report on infringement, titled Preliminary Expert Report of Kendyl A.

Roman ("Roman Report"), in large part the report addressed the issue of invalidity, with only a small section responding to Sandata's report on infringement. Sandata was rightfully concerned that the rebuttal report was in fact an opening report on invalidity, to which it had no opportunity to respond. It therefore requested that the Court strike the Roman Report, or, at a minimum, provide Sandata with an opportunity to submit a rebuttal report on invalidity. In opposing Sandata's request, Infrocrossing's attorney made the unconvincing argument that Sandata was trying to punish Infocrossing because its "expert prepared a more thorough report than Sandata's expert." (Letter from James E. Carty, III, Esq. ("Carty") to the Court, dated Aug. 20, 2007.) Infocrossing therefore argued that there should be no further expert reports but, if the Court permitted Sandata to submit a rebuttal report on invalidity, Infocrossing should be permitted to submit a reply on that same issue.

The Court agreed with Sandata's position but, rather than striking Infocrossing's report, allowed Sandata to submit a rebuttal report on invalidity, by September 12, 2007. The Court explicitly denied Infocrossing leave to submit a reply. (See Memorandum Endorsed Order, dated Sept. 11, 2007.) There had previously been no requests by the parties for the submission of reply reports, and the Court's expert discovery schedule did not provide for replies. Moreover, if the Court permitted Infocrossing

to submit a reply on invalidity, fairness would dictate that Sandata be given the right to reply on the issue of infringement, and the Court saw no need to belabor the proceedings in such a fashion. The Court subsequently extended the expert discovery deadline to October 5, 2007, in order to allow for completion of expert depositions.

Sandata submitted its rebuttal report on September 12, 2007. Infocrossing's attorney claimed, however, that the report was untimely because, instead of receiving it by 4:00 P.M., it was faxed to him after midnight. He therefore asked that it be stricken or, at a minimum, that the October 5 deadline for completing expert depositions be extended by thirty days, to November 5.[1] Infocrossing's counsel claimed that his expert was abroad and it was necessary for them to consult about the Sandata rebuttal report, which addressed technical matters, prior to the deposition of Sandata's expert. Notwithstanding objection to the extension by Sandata, the Court extended the discovery deadline to October 15, 2007, to allow Infocrossing's attorney additional time to consult with his expert in preparation for the deposition of Sandata's expert. Subsequently, in response to further appeals by Infocrossing's attorney, the Court extended the deadline for

---

[1] This type of request — asking that a document be stricken or for an additional thirty days to respond, based on a delay of eight hours — is, unfortunately, emblematic of Infocrossing's attorney's conduct in this action.

deposing experts to October 19, 2007.

Pursuant to a schedule agreed upon by the parties, on October 5, Sandata's damages expert was deposed, on October 9, Infocrossing's damages expert was deposed, and, on October 12, Sandata's technical expert was deposed, with Infocrossing's expert (Mr. Roman) present. On October 16, Mr. Roman's deposition was taken, and it is at this point in time that the events leading to the instant dispute arose.

Approximately thirty minutes into Mr. Roman's deposition, in response to a question directed to him, Mr. Roman made reference to a Supplemental Report he had prepared. When Sandata's counsel expressed puzzlement about any supplementary report, Infocrossing's counsel presented him with a twenty-page report, including more than 100 pages of exhibits, signed by Mr. Roman (the "Supplementary Report"). This was the first Sandata's counsel knew of such a report, and Infocrossing's explanation was that the report was a supplementation of the earlier "preliminary" report Mr. Roman prepared.

After completion of the first day of Roman's deposition, Sandata's counsel wrote to the Court, asking that the so-called Supplemental Report be stricken. (See Letter from Daniel M. Gantt, Esq. ("Gantt") to the Court, dated Oct. 16, 2007.) He argued that, while styled a supplemental report, in large part the report served as a reply to Sandata's rebuttal report, and such a report had been

5

specifically prohibited by the Court.  Moreover, Sandata's counsel argued, to the extent the report was a supplement to the first Roman Report, the delay in submitting any such untimely supplementation was a function of Infocrossing's counsel's lack of diligence.  This argument was grounded in the undisputed fact, which had been revealed in discovery, that Mr. Roman had not even been retained as Infocrossing's expert until July 27, 2007, and thus, he had been given only two weeks to prepare his expert report.[2]

As if the untimely and unauthorized Supplemental Report were not enough, on the same day Sandata's counsel was writing to the Court to voice his objection to the Supplementary Report, he was served with yet another supplementary report by Roman, which consisted of 382 pages of report and exhibits (the "Second Supplementary Report").  Sandata argues, not unreasonably, that the untimely reports rendered the deposition taken of Roman meaningless, and were simply Infocrossing's devious way of getting the last word on invalidity.  Sandata requests that both supplemental reports should be stricken. (<u>See</u> Letter from Gantt to the Court, dated Oct. 22, 2007.)

---

[2] On July 24, Infocrossing's counsel was complaining to the Court that he received Sandata's expert's report two or three days late and, therefore, his experts, who had agreed to be available over the weekend of July 21-22 to analyze the report, were disadvantaged in responding to the report.  Yet, in truth, Infocrossing had not even retained Mr. Roman's services until July 27.

In response, Infocrossing contends that Roman's supplemental reports were issued in order to comply with the provisions of Rule 26(e)(1) of the Federal Rules of Civil Procedure ("Rule 26"), which require a party to supplement the disclosures it has made if those disclosures are incomplete or incorrect. (<u>See</u> Letter from Carty to the Court, dated Oct. 19, 2004 ("Carty Oct. 19 Ltr.").) Infocrossing also contends that Sandata has not been prejudiced because its counsel questioned Roman at his deposition about his first Supplemental Report and, if he was truly unable to do so, he could have adjourned the deposition, which he chose not to do.

**DISCUSSION**

I. <u>Rule 26</u>

The Court agrees with Infocrossing on the requirements of Rule 26, as they relate to the supplementation of information provided in discovery. The Rule provides, in pertinent part:

> A party is under a duty to supplement at appropriate intervals its disclosure under subdivision (a) if the party learns that in some material respect the <u>information disclosed is incomplete or incorrect</u> and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect of testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends to both information contained in the report and to information provided through deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's [final pretrial disclosures] under Rule 26(A)(3) are due.

Fed. R. Civ. P. 26(e)(1) (emphasis added).

But that is as far as the Court's agreement with Infocrossing

goes.  With respect to virtually every other position taken by Infocrossing in connection with this dispute, the Court could not disagree more vigorously.

The purpose of the supplementation rule is to avoid ambush at trial and to assure that all material information has been disclosed.  By its express terms, the rule imposes a duty to supplement "information" that a party has already "provided" or "disclosed," either in response to a discovery request or in an expert report or deposition, when "the party learns that in some material respect the information disclosed is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1).

> The interest served by requiring the disclosure of expert opinions is self evident.  It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross-examination. By "locking" the expert witness into what Fed. R. Civ. P. 26(a)(2)(B) calls "a complete statement of all opinions to be expressed and the basis and reasons therefor," the opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and to prepare for cross-examination and rebuttal.  When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified.

Coles v. Perry, 217 F.R.D. 1, at *4 (D.D.C. 2003).

It should  be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought. See Fed. R. Civ. P. 26(a)(2)(B) ("The [expert] report shall contain a complete statement of all opinions to be expressed and the basis

and reasons therefor.").  It is only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete, that the duty to supplement arises.

II. <u>The First Supplemental Report</u>

As an initial matter, Infocrossing's claim that the two "supplemental" Roman reports are not rebuttal reports, but, instead, are merely supplementations required by Rule 26, is wholly disingenuous.  Infocrossing's counsel vigorously takes issue with Sandata's contention that the Roman reports are rebuttal or reply reports. For example, he argues:

> Sandata . . . goes on to make the totally unsupported and illogical argument that Infocrossing's Supplemental Report is a rebuttal report that should be stricken. Nowhere in Sandata's October 16th letter is there any support for its general accusation that Infocrossing's Supplemental Report is a rebuttal report.  Sandata does not point to even one instance in which Infocrossing's Supplemental Report should be considered a rebuttal report. Sandata merely calls Infocrossing's Supplemental Report a rebuttal report and then, in desperation, asks the Court to strike it.

(<u>See</u> Carty Oct. 19 Ltr.)  This empty rhetoric is belied by other, directly contradictory statements elsewhere in the same letter, as well as in the Supplementary Report itself.

For example, Infocrossing's counsel describes the so-called "new information" acquired by its expert as including the deposition testimony of Sandata's experts.  (<u>See, e.g.</u>, Carty Oct.

19 Ltr., at 2 ("[T]he Supplemental Report included Mr. Roman's assessment of Dr. Scholz' deposition, Mr. Francom's deposition and other documents that Mr. Roman independently obtained.").)  And, Mr. Roman himself states in his Supplementary Report:

> Since my Preliminary Report new deposition testimony, exhibits, information, documents, and prior art have become available. . . . In particular, I have review[ed] the various Expert Reports submitted in this case, including the Expert Report of David Francom ("Francom Report") and the Rebuttal Report of Scholz ("Scholz Rebuttal Report").  I have also attended the Deposition of Karl Scholz and reviewed the materials discussed during the deposition.  I have also reviewed the recent Deposition transcripts of David Francom and Karl Scholz.

(Supplement Report ¶¶ 9, 11.)  Moreover, substantively, nearly all of the discussion in the first Supplemental Report serves as a response to various assertions made by Sandata's expert.  This is simply not the type of "additional or corrective" information contemplated by Rule 26.

Thus, no matter what label Infocrossing's counsel chooses to attach to the report, it could not be more clear that it is, in fact, a reply/rebuttal to Sandata's expert's report, which itself was submitted in response to the first Roman report. Cf. Equant Integrations Servs., Inc. v. United Rentals (N. Am.), Inc., 217 F.R.D. 113, 116 (D. Conn. 2003) (rejecting argument that an untimely expert report was supplemental rather than rebuttal.)[3]

_____

[3] As the court in Equant Integrations Services concluded, in a similar situation:

> Despite defendant's claim that the [ ] report relies on testimony taken within a month of

The Court, however, specifically denied Infocrossing's request to submit such a reply. (See Letter from Carty to the Court, dated Sept. 10, 2007; Memorandum Endorsed Order, dated Sept. 11, 2007.)[4]

Infocrossing's transparent attempt to evade the Court's Order, by claiming that it was obligated to submit a "supplemental" report, pursuant to Rule 26(e)(1), because Sandata's experts' reports and testimony constituted newly-discovered evidence which rendered the information provided in the Roman Preliminary Report inaccurate or incomplete, will not be sanctioned; indeed, it is sanctionable. "Fed. R. Civ. P. 26(e) does not grant a license to

_____

> the date of the report, the fact that the expert consulted additional evidence before issuing his report is not enough to transform the report from rebuttal to supplemental. . . . Defendant may not circumvent the requirement that a rebuttal report be filed by arguing that the report is merely a Rule 26(e)(1) supplementation. If the report is intended to contradict or rebut the report prepared by the opposing party's expert," it is required to be filed under the schedule set for rebuttal reports.

217 F.R.D. at 116 (internal citations omitted).

[4] Even if the Court had not denied the request to submit a reply report, Federal Rule of Civil Procedure 26(a)(2)(c) requires that reports intended "solely to contradict or rebut evidence on the same subject matter identified by another under paragraph 2(B), [shall be made] within 30 days after the disclosure made by the other party." Here, thirty days after Sandata's September 12 report would have been October 12. Nevertheless, the first Supplemental Report was not produced until Roman's deposition on October 16. Thus, even if the default rules under the Federal Rules of Civil Procedure applied, as opposed to the Court's scheduling order, Infocrossing's Supplemental Report would have been untimely.

supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect." Coles, 217 F.R.D. at *3. Taken to its logical conclusion, Infocrossing's position would lead to an absurd scenario for which Rule 26(e)(1) provides no foundation — each party could claim the right to continually "supplement" its expert reports in response to the last expert report its adversary had submitted.

Infocrossing does not claim that it had previously provided Sandata any information that required correction, or that Roman's Supplemental Report corrected any particular information in the first report that was "incomplete or incorrect." Therefore, Rule 26(e)(1) provides no authority for filing the report after the deadline for the exchange of expert reports, and after the Court denied an earlier request to submit a reply report.[5]

---

[5] To the extent that the Supplemental Report references documents not discussed in the initial report, it was well established at the Roman deposition that those documents had been either produced by Sandata or secured by Infocrossing earlier in the litigation, were known of by both parties, and were in Roman's possession when he prepared his initial report. The word "incomplete" in Rule 26(e) cannot be expanded to permit a constant stream of "new" information that was available at the time of the initial report, but not included because of a lack of due diligence. Cf. In re Int'l Business Machines Corp. Secs. Litig., 163 F.3d 102, 109-10 (2d Cir. 1998) (in securities context, duty to correct arises when a statement believed to be true at one time is revealed not to be true by subsequently discovered information, and the duty to update arises when a statement which was reasonable at the time it was made, becomes

Pursuant to Federal Rule of Civil Procedure 37(b)(2), the Court may "make such orders in regard to the failure [to obey an order of the court] as are just . . . ." Accordingly, Infocrossing is precluded from relying on Mr. Roman's Supplemental Report.

III. The Second Supplemental Report

Roman's Second Supplemental Report was submitted to Sandata's counsel shortly before midnight on October 19, 2007, the deadline for completion of all expert discovery. Infocrossing's counsel thus argues that the report was timely filed. (See Carty Letter to the Court, dated Oct. 26, 2007, at 3.) It was not. In fact, Infocrossing's expert report on invalidity was due on July 20, 2007 - a date by which Infocrossing had not even retained Roman as an expert. Rebuttal reports were due on August 10. The Court overlooked Infocrossing's failure to comply with the ordered schedule, and permitted Infocrossing's August 10 report to serve as its report on invalidity. Sandata's rebuttal report was submitted on September 12, and, with its submission, there were to be no further expert reports. The discovery deadline was extended, first to October 5, again to October 15, and yet again to October 19, only to accommodate the experts' schedules and Infocrossing's counsel's requests, so that the experts' depositions could be taken. This should dispel any assertion that the October 19 Roman report was timely.

---

misleading because of a subsequent event).

Roman's Second Supplemental Report asserts that "new deposition testimony, exhibits, information, documents, and prior art have become available." (Second Supplement Report ¶ 3.) It goes on to state:

> [M]y investigation and review in this matter is continuing and this report represents my findings based on information available to me as of the date of this report. My review of the information now in my possession is continuing. Additional information may become available which would further support or modify conclusions that I have reached to date. Further, I reserve the right to consider and comment on any additional expert statements and testimony provided by other experts in this matter. Any changes or necessary amplifications of these conclusions will be addressed in supplemental reports or testimony, which I reserve the right to provide.

(Second Supplemental Expert Report ¶ 8.)

This reservation of rights, obviously crafted by counsel, once again evidences a failure to appreciate Rule 26's requirement of supplementation, as well as the import of court-ordered schedules. Put simply, experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions. If that were the case, there would never be any closure to expert discovery, and parties would need to depose the same expert multiple times.

The Second Supplemental Report contains more than twice the number of exhibits contained in the Supplemental Report. Mr. Roman does not attest that the new exhibits he provided with his Second

Supplemental Report, and relied upon to bolster his opinions, could not have been found and reviewed prior to submitting his initial or first Supplemental Report. He merely continued to "investigate." Nor is he supplementing his report with information that Infocrossing had and that recently became known to him, but was unknown by Sandata, so as to provide full and accurate disclosure. Rather, he merely seeks to produce a more thorough and stronger report than he initially produced. For example, he represents in one section of the Second Supplemental Report that "[t]his section provides additional details or background regarding the prior art and alternatives discussed in my Prior Reports." (See id. ¶ 63.) In another paragraph, Roman states that he "further analyzed" a document referenced in his Supplemental Report. (See id. ¶ 59.) This is simply an attempt to improve upon the prior reports.

In the end, it is apparent that Roman's initial report was termed "preliminary" because he either (1) intended to defer completing his report until he had an opportunity to see Sandata's response, or (2) he had not completed his analysis of the relevant information that was, or should have been, available to him. This appears to have been largely a consequence of Infocrossing's delay in retaining Roman as an expert. Yet, rather than acknowledging his self-created predicament, asking for additional time to complete the report, and deferring the Roman deposition, Infocrossing's counsel has chosen to assert a patently disingenuous

justification for the two untimely and unauthorized reply reports — that he is merely doing what he is obligated to do under Rule 26(e).

Rule 26(e) sets forth a "duty to supplement or correct." Duties are usually owed to other people, and are not for the benefit of the party who has the duty.[6]  Yet, it is only Infocrossing that benefits from its expert's repeated revisions of his report, at the expense of Sandata.  The arguments asserted by Infocrossing's counsel mangle the meaning and purpose of the Federal Rules of Civil Procedure.  They serve only to conceal or compensate for counsel's failure to comply with Court Orders and the Federal Rules.[7]  The Court will not countenance such conduct by permitting reliance on the Second Supplemental Report. Accordingly, with one exception, which will be discussed below, Infocrossing is precluded from relying on Roman's Second Supplemental Report. <u>Cf.</u> <u>Eckelkamp v. Beste</u>, 315 F.3d 863, (8th Cir. 2002) ("Even if plaintiffs did not have all the data needed to produce a timely rebuttal report, they knew one was needed and

---

[6] <u>See</u> Black's Law Dictionary 543 (8th ed. 2004) (defining duty as "[a] legal obligation that is owed or due to <u>another</u>") (emphasis added).

[7] It is rather ironic that in September, in opposing Sandata's right to submit a rebuttal to Infocrossing's expert report on invalidity, Infocrossing's counsel took the position that "[t]here is no need for an endless cycle of extra expert reports." (Letter from Carty to the Court, dated Sept. 10, 2007, at 2.)

could have moved for leave to file much earlier. . . . The district court's case order set its management requirements and did not provide for rebuttal experts, and the court was entitled to hold the parties to that order. . . . Appellant's have not shown that the district court abused its discretion by denying leave to file the rebuttal report. . . .").

## IV. Preclusion As A Sanction

The Court recognizes that preclusion of an expert report can be a harsh sanction. See Rmed Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94 Civ. 5587 (PKL) (RLE), 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002). Nevertheless, "although preclusion of evidence and dismissal of an action are harsh remedies and should be imposed only in rare situations, they are necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger." Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (internal quotation marks omitted); see also Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991) ("The discovery provisions of the Federal Rules of Civil Procedure are designed to achieve disclosure of all the evidence relevant to the merits of a controversy. It is intended that this disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention. When a party seeks to frustrate this design by disobeying discovery orders, . . . severe sanctions are appropriate.") (internal

quotation marks and citation omitted).

Accordingly, it is common for courts in this district to apply the following criteria in determining whether to exclude expert testimony: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of the party to cure the prejudice, (3) the extent to which the waiver rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's [scheduling] order." Id.; accord Equant Integrations, 217 F.R.D. at 117-18; see also Lore v. City of Syracuse, No. 5:00-CV-1833, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17, 2005) ("The touchstone for determining whether to exclude an untimely expert report is whether the party opposing its admission is prejudiced." (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791 (3d Cir. 1994))); Montefiore Med. Ctr. v. Am. Protection Ins. Co., 326 F. Supp. 2d 470, 475 (S.D.N.Y. 2002) ("[P]recluding evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents flagrant bad faith and callous disregard for the rules.").

In the instant case, the Court is not precluding Roman's testimony. It is merely limiting him to the opinions expressed in the only report authorized by the Court.

Moreover, to permit reliance on the Supplemental and Second Supplemental Reports would result in substantial prejudice to Sandata. First, Roman's deposition has been completed and the deadline for completion of expert discovery has passed. If the reports were to be allowed, Sandata would either be prevented from deposing Roman on his revised and supplemented opinions, or, if permitted, would be put to the expense of conducting another deposition. More importantly, the expert schedule set by the Court did not contemplate reply expert reports; indeed, the Court explicitly prohibited them. Therefore, each party was required to submit a report on the issues on which it bears the burden of proof, and the opposing party was given an opportunity to submit a rebuttal. Here, Infocrossing seeks to gain unfair advantage by submitting two replies, when none were permitted, and by having the last word when Sandata did not have the same with respect to the issues on which it bears the burden of proof.

The Court further concludes that Infocrossing has acted in bad faith. The reasons are many. Notwithstanding the fact that the Court explicitly denied Infocrossing leave to submit a reply expert report (Sandata, as well, was not authorized to submit a reply report), Infocrossing nonetheless filed two such replies. At the same time, it disingenuously termed them supplemental reports. One of the reports was submitted while Roman, its author, was actually being deposed, and the other was submitted several days after the

deposition had been completed, months after the last report was to be submitted. At no time prior to the deposition did Infocrossing indicate that its expert was in the process of writing two additional reports, thereby allowing Sandata to either oppose their submission or delay the expert's deposition.[8]

Finally, and most egregiously, after having misled the Court in July, see note 2, supra, Infocrossing again misled the Court. Infocrossing's counsel sought an adjournment of the discovery deadline, purportedly to permit him additional time with Mr. Roman to prepare for the deposition of Sandata's expert. He claimed that Roman was abroad at the time Sandata submitted its rebuttal report (mid-September), that he would not return until October 1, and that the October 5 deadline for completing expert depositions would be unfair to Infocrossing because "[Sandata's report including exhibits is ninety-five (95) pages and contains highly technical information. The technical expert we have hired is absolutely needed to assist us in deposing Sandata's experts and deciphering the opinions." (Letter from Carty to the Court, dated Sept. 13, 2007, at 1.) The Court accommodated Infocrossing and extended the discovery deadline to October 19. It now appears that the

---

[8] Infocrossing's offer at the deposition, to adjourn the deposition, was an empty gesture. Counsel had already spent time preparing for and attending the deposition; moreover, there would not have been adequate time to reschedule the deposition, in light of the imminent deadline for completion of expert discovery.

extension of time Infocrossing secured in October was utilized by Mr. Roman to prepare the two unauthorized reply reports, one provided to Sandata on October 15, and the other produced on October 19.

Infocrossing's two supplemental reports were untimely, unauthorized, and created under false pretenses. Pursuant to Federal Rule of Civil Procedure 37(b)(2), and applying the relevant case law to these facts, the Court concludes that reliance on the two supplemental expert reports, with the one exception discussed below, will be precluded.

V. <u>The Colgan Documents</u>

In submitting the Second Supplemental Report, Infocrossing made the claim that the report addresses a "new revelation," in the form of "remarkable" documents relating to copyrighted computer programs which Infocrossing contends "appear to have been in use prior to and appear to anticipate or obviate the system patented by the three Katz patents [the patents owned by Sandata which are at issue in these cases]." (Letter from Carty to the Court, dated Oct. 22, 2007.) If true, this could be relevant to the validity of the patents in issue. Infocrossing's counsel claims to have uncovered the documents during the week of October 15, and he contends that they were "either concealed or unintentionally not brought to the attention of the Patent Office during the reexamination proceeding Infocrossing filed for the second Katz patent." (<u>Id.</u>) He further

contends that they were not produced by Sandata during pretrial discovery, although they would have been responsive to an Infocrossing document request. (<u>See</u> Letter from Carty to the Court, dated Oct. 26, 2007.)

The documents in issue that Infocrossing claims to have recently discovered are a statement by John Colgan, the author of various computer programs involved in earlier patent litigation with MCI Worldcom, Inc. (the "Colgan Document"), multiple registrations for copyrighted computer programs belonging to Colgan, and various articles, advertisements, and documents referenced in, or related to, the Colgan Document (collectively "the Colgan Documents").

Sandata denies concealing any relevant documents from the Patent Office and contends that they were, in fact, provided to Infrocrossing in the discovery process in this litigation. (<u>See</u> Letter from Gantt to the Court, dated Oct. 24, 2007.) Infocrossing responds that "Sandata did bury within its 10,000 pages of document production references that could be used to start an investigation that may lead to the existence and location of the Colgan Document, but the Colgan Document was never provided or specifically identified by Sandata." (Letter from Carty to the Court, dated Oct. 26, 2007.)

Although Infocrossing claims that the documents were improperly concealed, there is no dispute that, for over a year,

Infocrossing had been aware of the MCI litigation in which Colgan had been involved, and had been provided in discovery a copy of the settlement agreement that resolved that litigation. Having been made aware of the litigation, and provided with only the settlement agreement resolving the litigation, it should have been apparent to Infocrossing that there were other documents in existence relating to the litigation. Yet, Infocrossing does not appear to have raised the issue with Sandata in the course of the discovery proceedings, and it sought no relief from the Court with respect to any purported failure by Sandata to produce litigation documents.[9] Moreover, it appears that Infocrossing delayed making a search of the MCI litigation court file until only recently, after its expert reports were due and lon after fact discovery was complete. The Colgan Document was in the court file, as evidenced by the clerk of the court's stamp.[10] Thus, had it exercised diligence in investigating the MCI litigation and Colgan, as it did after Roman submitted his initial and first supplemental expert report, Infocrossing could have discovered the documents in issue before Roman issued his first report. This substantially deflates the overblown hyperbole Infocrossing's counsel employs in describing

---

[9] Sandata was not a party to the litigation, but it acquired the MCI patents that were in issue in the litigation.

[10] It is unclear whether Infocrossing obtained the document from the Court file or from Colgan directly. In either case, those efforts could have been undertaken long ago.

the alleged concealment of the Colgan Documents.[11].

It is also important to put in perspective how little of the Second Supplemental Report is devoted to the Colgan Document. In his 101-paragraph Second Supplemental Report, Roman appears to discuss the Colgan Document, and documents it references, in three paragraphs, 74 through 76, and appears to allude to the consequences of not disclosing the document to the Patent Office in two additional paragraphs, 95 and 97. His discussion of the Colgan Documents is cursory, and the only opinion proffered is that the Colgan Document and the documents it cites were "material to the validity of the Katz Patents," and to the question of patentability of the '839 Patent. (Second Supplemental Report ¶¶ 74, 95.) Most of the other substantive information in the report appears to have been merely the product of further investigation and thought by the expert, used to strengthen his earlier two reports. Again, to permit repeated revisions of an expert report in order to strengthen it defeats the purpose of the scheduled exchange of an opening report by one party and a rebuttal report by the other.

Nevertheless, the Court does not dismiss Infocrossing's argument that the Colgan Document should have been produced by Sandata in discovery, as Infocrossing had made a document request (Number 42) that specifically sought all documents concerning any

_____

[11] Indeed, in his first Supplemental Report, Roman discussed Colgan and his inventions, and Infocrossing questioned Sandata's expert about Colgan's inventions at the expert's deposition.

civil action involving the alleged infringement of the Katz Patents. Sandata has not taken the position that it did not itself have the Colgan Document; its letters are silent on the issue.

In the end, whether the failure to discover the Colgan Document was a function of Infocrossing's lack of diligence or Sandata's discovery dereliction need not be resolved. The significance of Colgan's invention was not raised for the first time in Roman's Second Supplemental Report. Roman addressed it in his initial report, the report upon which Roman's testimony will be based. Sandata's expert also addressed the Colgan invention, and was questioned about it at his deposition. Moreover, Infocrossing has expressed its intention to call Colgan as a witness, and there is nothing to preclude Infocrossing from offering the Colgan Documents in evidence. In this instance, therefore, rather than prolonging the debate about who is at fault, the Court concludes that the important interest in developing a complete record on the significance of Colgan's invention and documents outweighs any prejudice that may result from supplementing the record.

The Court will therefore permit both parties' experts to submit no more than a five-page supplement to their only authorized reports on invalidity (Roman's Preliminary Report and Sandata's rebuttal report), addressing the Colgan Documents. The discussion shall be limited to the documents identified in the Second Supplemental Report as Exhibits 27-39. The supplements shall be

exchanged simultaneously at 2:00 P.M. on November 30, 2007. The Court sees no need for further depositions of the experts.[12]

VI. <u>Destruction of Documents</u>

Infocrossing alleges that Sandata's expert destroyed "crucial" evidence in order "to deny Infocrossing equal justice and due process," and that Sandata's counsel permitted the destruction of that evidence. (Letter from Carty to the Court, dated Oct. 23, 2007.) As has been typical, Infocrossing's counsel was not content to rest on that allegation, but instead he submitted several additional letters on the issue, each one raising the level of outrage and indignation. For example, in a subsequent letter, counsel claimed:

> The serious prejudice caused and intentional nature of the destruction of evidence in the presence of Sandata's counsel warrant that the Court dismiss this case as a sanction against such a dishonest and willful attempt to destroy the integrity of the Federal Court System and to deny Infocrossing its Constitutional right of due process and equal treatment under the law. Failure to impose this sanction against Sandata will reward Sandata's possibly criminal, conduct and encourage Sandata and others to destroy evidence in an effort to gain an unfair advantage in the Federal Court.

(Letter from Carty to the Court, dated Oct. 31, 2007.) Infocrossing therefore seeks sanctions against Sandata's counsel

---

[12] Although the Second Supplemental Report is, in effect, stricken, one portion of it appears to have been merely the vehicle used to transmit documents that had been requested at Roman's deposition. This opinion is not intended to preclude the use of those documents at trial, assuming they are otherwise admissible in evidence.

personally, and argues that the Complaint should be dismissed "with or without prejudice." (Letter from Carty to the Court, dated Nov. 2, 2007.)

This overwrought rhetoric is disproportionate in the extreme to the "misconduct" alleged. The so-called "destruction" of evidence relates to notes a Sandata expert made while meeting with Sandata's counsel in anticipation of writing his expert report. After the meeting ended, the expert threw his notes in the trash; he did not discuss his actions with counsel, and was not instructed to do so by counsel. The expert testified at his deposition that the subject of his conversation with counsel was to understand Sandata's litigation goals, and those goals were actually set forth as headings in the report he produced.[13] Yet, Infocrossing's counsel speculates, without any support, that the notes reflected substantive information that Sandata's counsel told the expert to write in his report. (See Nov. 2, 2007 Carty Letter.)

The mere fact that the expert tossed out his meeting notes, without authorization by, or direction from, Sandata's counsel, does not rise to the level of sanctionable conduct, and clearly does not merit the harsh sanction of dismissal. See Shcherbakovskiy

---

[13] For example, one of the goals the witness could recall was for him "to fully understand the existing three patents, and to fully understand sufficient detail of the Infocrossing system, to understand whether it infringes on the particular patents in question." (Deposition Transcript of Karl W. Scholz, dated Oct. 12, 2007 ("Scholz Dep."), at 45.)

v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007) ("The sanction of dismissal is a drastic remedy that should be imposed only in extreme circumstances. . . .") (internal quotation marks omitted); Donato v. DeYoung, 172 F.R.D. 75, 84 (S.D.N.Y. 1997) (even where court found destruction of important evidence the result of gross negligence, and the offending party had engaged in a pattern of bad faith behavior, the court declined to strike the party's answer or direct a verdict). A party seeking even a lesser sanction for spoliation of evidence — an adverse inference — must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense." Residential Funding Corp. V. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002).

Assuming that Infocrossing is correct in its contention that the expert was obligated to preserve his notes of his meeting with counsel — although the obligation is not entirely clear under the facts of this case — there is no evidence that either Scholz or Sandata's counsel acted with a culpable state of mind.[14]

---

[14] While an expert is required to produce any material he considered or relied on in preparing his report, Sandata's expert did not rely on his notes, as he tossed them out immediately after his meeting and before he began preparing his report. See University of Pittsburgh v. Townsend, No. 3:04-cv-291, 2007 WL

Clearly, contrary to Infocrossing's contention, the notes were not "critical evidence" in the case. The minimal information in the notes — counsel's litigation goals — does not constitute probative "evidence" on the issues to be decided in the litigation — whether Sandata's patents are valid and whether or not Infocrossing has infringed those patents. See Residential Funding, 306 F.3d at 108-09 ("relevant in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence."); M & T Mortgage Corp. v. Miller, No. CV 2002-5410 (NG)(MDG), 2007 WL 2403565, at *10 (E.D.N.Y. Aug. 17, 2007 ("The party claiming spoliation must demonstrate that the destroyed evidence would have supported its claims."). There is no basis to

---

1002317, at *3 (E.D. Tenn.) ("the Court does not read Rule 26((a)(2) to impose an affirmative duty upon an expert to preserve all documents"). To the extent that he relied on his recollection of the meeting in formulating the outline of his report, he testified at his deposition as to what he could recall of the meeting, and that his report's section headings reflect the subjects discussed with counsel that the report was to address. This testimony significantly mitigates any potential prejudice to Inforcrossing caused by the loss of the notes. Moreover, the expert's meeting notes did not constitute evidence in the usual sense of the term. Scholz's notes did not relate to a meeting he attended with, for example, company officials or inventors, where he was seeking factual information or evidence that would have an impact on his analysis of the patents in issue. Nor were the notes provided to him by Sandata or its counsel. Although Infocrossing points to a document request that purportedly applies to the notes, because it calls for notes of meetings, the request was not one that was directed to the expert under Rule 26 (2) or (4)(A), and one could easily assume that it did not apply to an expert's meeting with counsel, as the request calls for "internal company communications, and minutes or notes of meetings." (Infocrossing Document Production Request No. 39.)

conclude that anything in the notes would have supported Infcrossing's position in the litigation or harmed Sandata's position. See Byrnie v. Town of Cromwell, 243 F.3d 93, 108 (2d Cir. 2001 ("The burden falls on the "prejudiced party" to produce "some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.") (quoting Kronisch v. United States, 150 F.3d 112, 128 (2d Cir.1998)); Occhino v. Citigroup Inc., No. CV-03-5259 (CPS), 2005 WL 2076588, at *13 (E.D.N.Y. Aug. 26, 2005) ("[T]he party seeking sanctions must also make some showing indicating that the destroyed evidence would have been relevant to the contested issue . . . ."); Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 221 (S.D.N.Y. 2003) ("because . . . spoliation was negligent and possibly reckless, but not willful, [the party seeking sanctions] must demonstrate that a reasonable trier of fact could find that the [evidence] would support her claims."). Moreover, the expert testified that the goals communicated to him by counsel were roughly set forth in his report as section headings. All of the other notes the expert created in the course of his work, relating to his actual evaluation of the evidence, were retained and produced to Infocrossing. Thus, at most, the notes might have had some minimal impeachment value.

Accordingly, Infocrossing's request for sanctions is denied.

SO ORDERED.

_____

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: November 16, 2007
New York, New York